STATE v. JULIUS BUCHANAN.

(Filed 3 January, 1940.)

**Criminal Law § 51—Permitting solicitor to read decision on former appeal which was not germane and tended to discredit defendant held reversible error.**

Upon the trial the court permitted the solicitor to read, over defendant's objection, excerpts from the opinion of the Supreme Court on a former appeal granting a new trial for error committed by the court on the former trial in remarking during the course of the trial that defendant had "sworn both ways" and for error in the instruction that "a person of good character is more apt to tell the truth about the matter than a person of bad character." Defendant did not take the stand upon the second trial. *Held:* Since the law contained in the excerpts was not germane to the second trial, and might tend to confuse the jury, and since the excerpts were a vehicle to convey to the jury part of the evidence which the appellate court had under review with its commentaries thereon, and especially since the excerpts brought to the jury's attention

the very matter which was held prejudicial to defendant upon the former trial and was possibly even more prejudicial since the jury might think defendant has "sworn both ways" on the former trial on a substantial feature, the action of the court in permitting the solicitor to read the excerpts without correction by the court is prejudicial error.

APPEAL by defendant from *Alley, J.,* at July Term, 1939, of FORSYTH. New trial.

Charge: Murder.

Verdict: Guilty of murder in the first degree.

Sentence: Death by asphyxiation.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State, appellee.*

*John D. Slawter and Richmond Rucker for defendant, appellant.*

SEAWELL, J. The defendant was charged with the murder of his wife. The evidence was ample to sustain a verdict of murder in the first degree. Included in that evidence was a purported confession of the defendant, to the introduction of which objection was made. The exception cannot be sustained, since the evidence of the voluntariness of the confession is well within the standards heretofore approved by the Court.

One objection by the defendant, however, raises a question of such a serious nature as to merit further consideration.

The defendant was tried, convicted, and sentenced to death for this offense before, appealed, and a new trial was granted. The case is reported *ante,* at page 34.

Upon the second trial, now under review, the judge, over objection of the defendant, permitted the solicitor to read the following excerpts from the opinion in that case, with comment thereupon, as follows:

"THE SOLICITOR. This is by *Chief Justice Stacy.* 'Whereupon the court stated in the presence of the jury: "He swore both ways." To this the defendant noted an exception. The exception is well taken. The effect of the observation was to disparage or to discredit the defendant's testimony in the eyes of the jury. The remark, which, of course, was an inadvertence, is just one of those slips, or casualties, which, now and then, befalls the most circumspect in the trial of causes on the circuit.

" 'Again, the following excerpt taken from the charge forms the basis of one of defendant's exceptive assignments of error: "A person who has a good character is not as apt to commit the offense as a person of bad character, and a person of good character is more apt to tell the truth about the matter than a person of bad character." These exceptions are well taken.'

"I do that, gentlemen of the jury, because I want you to know that these exceptions will not arise in this case because, of course, I take it his Honor is not going to make a statement which the Supreme Court says is a statement of opinion. The law says the judge may not express an opinion, and I argue the Supreme Court said there his Honor, who tried the case, another judge, said: 'He swore both ways.' They said that is a statement of opinion. That won't arise in this trial. I want that understood in this case. That is not going to arise."

Reference to the opinion from which this quotation is made will show that the part read by the solicitor was immediately preceded by the following: "On the trial the defendant was asked by the solicitor if the money found by the officers when he was arrested came from the sale of liquor. He answered in the negative. The solicitor then inquired: 'You were not working. Where did you get it?' Counsel for defendant objected, with the remark, 'He did not say he was not engaged.'" We think the full effect of the objection applied in the present case can be better understood by taking these two excerpts together.

While the case before was sent back for retrial principally upon the ground that the remark of the judge at the time—"He swore both ways," —was calculated to discredit the defendant's testimony in the eyes of the jury, it has another significance at this time, since the defendant did not go upon the stand at his more recent trial. The jury might have inferred that he did not go upon the stand in his own defense because he had previously "sworn both ways." It is all the more unfortunate because while in the former trial the remark was predicated upon his inconsistent statement as to incidental facts, upon this trial the jury might naturally infer that he had made contradictory statements with regard to the killing itself.

We are sure that the solicitor was sincere in his purpose to disabuse the minds of the jury of the notion, if they entertained any such notion, that the action of the Supreme Court in the former case might be taken as any indication of an opinion as to the defendant's guilt or innocence, or as to the propriety of his conviction upon proper evidence of any degree of the offense charged. It is sufficient to say that neither the former opinion nor this opinion has any such effect.

It is the peculiarity of our practice that counsel for the defendant had the right to go to the jury both upon the law and the facts—C. S., 203— although C. S., 564, requires the judge to apply the appropriate law to the evidence; but neither the counsel nor the judge has the right to confuse the jury with statements of the law which have no application to the case they are then trying, more especially when it may be made a vehicle to convey to them any part of the evidence which the appellate Court had under review, or any commentaries thereupon. Much less

would this be proper when the comments were upon a former trial of the defendant for the same offense and the commentary had been of such a character as to produce the necessity of a new trial. Neither the law read to the jury nor the facts upon which such comment was made was in any sense germane to any question to be considered by them upon this trial, and that situation was, of course, obvious, since the evidence was all in, the defendant had not gone upon the stand, and argument was in progress. *S. v. Tucker,* 190 N. C., 708, 714, 130 S. E., 720. It was an independent venture of the solicitor, addressed to a matter *dehors* the trial—and highly speculative. *Conn v. R. R.,* 201 N. C., 157, 159 S. E., 331, 17 A. L. R., 641; *Howard v. Telegraph Co.,* 170 N. C., 495, 87 S. E., 313.

Reading from the report of a previous trial is especially attended with danger. *Forbes v. Harrison,* 181 N. C., 461, 107 S. E., 447. The trial judge did not undertake to correct any prejudicial effect which the reading of the opinion might have had, but, on the contrary, was apparently satisfied with the explanation of the solicitor. *S. v. Tucker, supra.*

The case has been twice tried and the defendant twice convicted. It is unfortunate that it must be tried a third time because of practically the same error, which has been allowed to speak through the recorded expressions of a former trial, with a like power to do harm. But with the court the standards of trial remain the same.

Comment upon other assignments of error not here considered becomes unnecessary.

For the error assigned, the defendant is entitled to a new trial, and it is so ordered.

New trial.